UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            -against-<br><br>FREDERICK FELIX,<br><br>                    Defendant. | 16 CR 167 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

　　Before the Court is Defendant Frederick Felix's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic (dkt. no. 364).  The Government has opposed (dkt. no. 366), and Mr. Felix has replied (dkt. no. 380).  For the reasons set forth below, the motion is denied.

I. **Background**

　　A. **Felix's Criminal Conduct and the Indictment**

　　The charges against Felix arose out of an Organized Crime and Drug Enforcement Task Force (OCDETF) investigation into narcotics trafficking in Manhattan's Lower East Side.  On July 25, 2016, an indictment was returned by a Grand Jury in the Southern District of New York against Felix and eleven other defendants for conspiring to distribute significant quantities of controlled substances in and around the New York City area.  (Indictment, 16 Cr. 167.)  Felix was indicted on one count of conspiracy to distribute and to possess with the intent to

1

distribute 5 kilograms and more of cocaine, 1 kilogram and more of heroin, and 280 grams and more of cocaine base, in violation of Title 21, United States Code, Sections 841(b)(1)(A) and 846 ("Count One").  On August 11, 2016, Felix was arrested and detained pending trial.

### B. Felix's Plea Agreement and Guilty Plea

On February 21, 2018, Felix pled guilty, pursuant to a plea agreement with the Government (the "Plea Agreement"), to a conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846 (a lesser included offense of Count One).  (See dkt. no. 229.)  Under the terms of the Plea Agreement, the parties agreed that pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(5), the base offense level was 30, before accounting for acceptance of responsibility, because Felix's offense involved distributing approximately 2 kilograms of heroin, and approximately 1 kilogram of cocaine.  With respect to Felix's criminal history, the parties agreed that Felix had four criminal history points and was in criminal history category III.  In particular, and as more fully detailed in the PSR, Felix had twelve prior adult convictions.  (Presentence Investigation Report, dated May 25, 2018, §§ 55-78.)  Two of these convictions involved firearms, and many others involved drugs.

In light of these calculations, the parties stipulated that Felix's applicable Guidelines range was 87 to 108 months imprisonment (the "Stipulated Guidelines Range").

**C. Felix's Sentencing**

On June 4, 2018, Felix appeared for sentencing.  (See dkt. no. 259.)  After adopting the Guidelines in the plea agreement, which were consistent with the PSR's calculations, the Court then discussed the relevant 18 U.S.C. § 3553(a) factors.  Id. at 10.  The Court explained that the offense was "serious," and involved a "significant quantity of drugs," "which obviously did substantial harm to Mr. Felix's community."  Id.  With respect to his history and characteristics, the Court noted that "it seems that Mr. Felix has resorted to criminal activity from his teenage years until his now arguably middle-aged years and [his criminal activity] has not diminished," which raised "great concern" "about recidivism."  Id.  As a result, the Court's sentence was necessary to reflect general deterrence, as well as specific deterrence, and "to protect the public from future crimes of this defendant."  Id. at 11.  The Court then imposed a total sentence of 87 months imprisonment, which was the low-end of the Stipulated Guidelines Range.  Id.

**D. FMC Devens and Felix's Disciplinary History**

Felix is currently housed at FMC Devens and has served approximately 68 months of his sentence, which is approximately

3

78% of his total sentence.  Felix has been sanctioned six times by the BOP while in its custody.  Initially, while in pre-trial detention, Felix was sanctioned once for conducting a business without authorization.  Since he was sentenced, Felix has been sanctioned multiple additional times.  Specifically, on November 15, 2018, Felix was sanctioned for possessing a hazardous tool; on August 23, 2019, he was sanctioned for possessing drugs/alcohol; on January 13, 2020, he was sanctioned for possessing an unauthorized item; on January 15, 2020, he was sanctioned for possessing drugs/alcohol; and on February 15, 2021, he was sanctioned for tattooing or self-mutilation.  (See BOP Inmate Disciplinary Record, Exhibit A to dkt. no. 366.) Assuming good behavior, the Defendant's scheduled release date is February 12, 2023.

### E. Felix's Administrative Request for Release and Instant Motion

The Government concedes that Defendant's motion is ripe and notes that Defendant presents several factors that normally would be relevant to his risk of complications from COVID-19, including obesity, diabetes, high blood pressure, and asthma. (Dkt. no. 366 at 7.)  Felix's medical records also disclose various medical complications due to his poor or non-compliance with medical instructions.  Id.

4

II.  **Applicable Law**

Under 18 U.S.C. § 3582(c), as amended by the First Step Act, a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances.  One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances."  Id. § 3582(c)(1)(A)(i).[1]  A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  Id. (emphasis added).  Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

---

[1] Although the First Step Act does not expressly address release to home confinement, a district court may reduce the defendant's sentence to time served, release the defendant to supervised release, and order home confinement as a condition of supervised release, so long as that additional time on supervised release "does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A); accord United States v. Park, 456 F. Supp. 3d 557, 563 (S.D.N.Y. 2020).

5

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed except" as provided by statute. As relevant here:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Id.

To satisfy the requirements of sentence reduction pursuant to the compassionate release provision, a defendant must demonstrate "extraordinary and compelling reasons." The Second Circuit has held that the First Step Act of 2018 "allows [district] courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling'" and that the BOP Director is no longer the sole arbiter in determining whether the threshold is met. See United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's

discretion."). Courts may "look[] to § 1B1.13 for guidance in the exercise of [their] discretion, but [are] free to consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" United States v. Rodriguez, 16-cr-07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020) (quoting Brooker, 976 F.3d at 237)).

Whether such "extraordinary and compelling reasons" exist, however, is only "[t]he threshold question." United States v. Daugerdas, 2020 WL 2097653 (WHP), at *2 (S.D.N.Y. May 1, 2020). "[T]his Court's analysis does not end with a finding that 'compelling and extraordinary reasons' warrant compassionate release. This Court must also 'consider[] the factors set forth in section 3553(a).'" Id. at *4.

Those § 3553(a) factors include, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct; [and]
   (C) to protect the public from further crimes of the defendant . . . .

18 U.S.C. § 3553(a).

### III. Discussion

The Defendant was fully vaccinated as of early 2021. (See BOP Health Services Immunization Record, Exhibit B to dkt. no. 366). As the Government points out, the Defendant has received a vaccine approved by the FDA for emergency use based on the FDA's conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. See FDA Decision Memorandum, Pfizer-Dec. 11, 2020, https://www.fda.gov/media/144416/download. Accordingly, Defendant is no longer at high risk of contracting severe illness or death as a result of COVID-19 and thus has not presented "extraordinary and compelling circumstances" compelling release.

Even if the Defendant were at an elevated medical risk, that would not be the end of the matter. As noted above, the Court must also consider the Section 3553(a) factors in weighing whether immediate and permanent release from prison is warranted.

As also noted above, Defendant has engaged in criminal activity from his teenage years through his now middle-aged years. Also, he has continued his unlawful activities while incarcerated, having been sanctioned numerous times by BOP, including for possessing a hazardous tool and for possessing

drugs or alcohol.  Releasing Mr. Felix now, when he has, by his calculation, seven months until release to a community correctional facility, (dkt. no. 380 at 2), would constitute an unnecessary danger to his community.  Despite his multiple convictions and multiple disciplinary sanctions, this Defendant has not indicated he is ready to live a law-abiding life.

## IV.  <u>Conclusion</u>

For the reasons set out above, the Defendant's motion pursuant to 18 U.S.C. Section 3582(c)(1)(A) (dkt. no. 364) is denied.  The Clerk of Court shall mail a copy of this order to Mr. Felix.

**SO ORDERED.**

Dated:    New York, New York
          January 28, 2022

*Loretta A. Preska*
LORETTA A. PRESKA
Senior United States District Judge